Green, J.
delivered the opinion of the court.
This bill is brought to recover from the defendant, who is *161 administrator of William Gilliam, deceased, several slaves, of wRom said intestate died possessed.
The record discloses .the following facts: The intestate of the defendant married the complainant, Eliza G. Gilliam, daughter of Richard Gilliam, of Buckingham county, Virginia, in the summer of 1836. The negroes in controversy were placed in his hands, and he executed the following writing: “Know all men by these presents, that I, William Gilliam, of Rutherford county, Tennessee, having married Eliza G. Gilliam, daughter of Richard Gilliam, of Buckingham county, Virginia, by which connexion, I have received a certain portion of said Richard Gilliam’s estate, as devised to his daughter in his last will and testament, now in his possession, which property I have receipted for on the back of this instrument, (which I do through choice,)-which property I have received on the following conditions, viz: that, if my wife, Eliza G. Gilliam, should die without leaving any lawful heirs of her body, in that event, I bind myself to return the property, with its increase, to the said Richard Gilliam, or his legal representatives; and I further agree, that, in the event my wife die, bearing any heir or heirs of her body, and neither of them lives to arrive at lawful age, and die without leaving any heirs of their body, the property shall return to the said Richard Gilliam, or his legal representatives, as above stated; and should I die, leaving my wife, Eliza, a widow, having issue, the title to the above mentioned property shall be in Eliza G. Gilliam, free from the claim or claims of each and every person whatever; provided, always, that I, William Gilliam, should have the right to dispose of or keep any part of the aforesaid property, provided I either receive or pay over to the said Richard Gilliam, or his lawful representatives, the .amount of the value of said property, before the transfer or removal of the same. The estimate of the property is here set on the back of this instrument, coupled with my receipt. In witness whereof, I bind myself, my heirs, administrators and assigns, both jointly and severally, in the faithful performance of this instrument, so that the true intent and meaning shall remain in full force and virtue; this 2nd day of September, 1836. William' Gilliam.”'
*162 This instrument was not proved' and recorded. On the back of it is endorsed a receipt of William Gilliam, for the negroes Monroe, Louisa and child, and a boy, Claiborne.— Richard Gilliam, the father of Eliza, died in 1839, having made and published his will, dated in 1833, and which was duly proved and recorded in Buckingham.county court, (Virginia,) the 9th of September, 1839. In his will, he devised to his two sons, Edward G. Gilliam and Richard H. Gilliam, (two of the complainants in this bill,) in. trust for the benefit of his daughter, Eliza G. Gilliam, the negroes. Monroe, Louisa, Claiborne, and Lucy, besides other property, to be held for the benefit of the said Eliza and her heirs, and at her death to go to the children. William Gilliam brought the negroes to. Rutherford county, Tennessee, soon after he received them in possession, and continued in possession of them until his death, which happened in the Spring of 1842. William Gilliam died intestate and in debt. The defendant is a creditor, and has taken out letters of administration on his estate, and, as administrator, holds the slaves in controversy in his possession, insisting that they are assets of the' estate of his intestate.
1. The first question is, in what character did William Gilliam receive the possession of'these slaves? •
The instrument executed by him is very inartificially drawn,- but.it is not difficult to perceive that it was not the intention of the parties that he should have any title to the slaves. It provides, that, if his wife should die without children, the negroes were to be returned to Richard Gilliam’s estate; or if he should die, leaving his wife a widow, the property and the slaves were to be in his wife, Eliza, free from all other claims: and, in the last clause of the instrument, it is provided, that the said William Gilliam should have the right to dispose of or keep any part of said property, provided he should pay over to Richard Gilliam, or his representatives, the value of the same, before its removal or transfer. It is apparent, from these provisions, that Richard Gilliam did not part with his title to the property, and that it was placed in the hands of his son-in-law, for the use and benefit of. his daughter.
*163 2. But, it is said that, as the negroes remained more than five years in William Gilliam’s possession, if they were loaned, or were placed in the hands of William Gilliam, upon the condition that they were to revert to the estate of Richard Gilliam, the act of 1801 declares such condition, or reservation, to be fraudulent as to creditors, and that the absolute property is with the possession. And this proposition would be certainly for the defendant, if Richard Gilliam had continued in life for five years from the time he delivered to William Gilliam possession of the negroes. But he died in three years after the marriage of his daughter, and by his will devised the negroes. to the complainants, in trust for Eliza G. Gilliam. The object of this devise was, that Mrs. Eliza G. Gilliam should enjoy the use and service of the slaves. This could not be, unless she were to retain the possession of them, which possession, of course, would be her husband’s possession. We are, therefore, to regard the possession of William Gilliam, from the date of the probate of this will, as in subordination to the title of the trustee. It is certain he never claimed the negroes as his own, and his possession was just such as the will contemplated; and'without permitting which, the trustees would have defeated the objects of the testator. Surely, if a father lend his married daughter a negro, and die a year thereafter, devising the negro to trustees for his said daughter’s separate use, the subsequent possession of the husband would not be held upon the loan, but would be in subordination of the trust. The loan would be terminated by the death and the devise, and the continued possession must be either adverse to the trustees for himself, or in subordination of the trust. In this case, it is not pretended there was any such adverse possession.
3. But, if it were to be regarded as a loan for the whole five years, and therefore fraudulent as to creditors, this defendant has no right to resist a recovery on that ground. He represents William Gilliam, and, as his intestate could not have a recovery, the administrator who represents him cannot; and the fact, that the defendant is also a creditor, makes no difference, as this court has repeatedly decided. Peake *164 vs. Ligon, 10 Yerg. R. 469, Coleman vs. Pinkard, 2 Hump. R. 185; Moody vs. Fry, 3 Humph. R. 567.
We have examined the ease of Shields, adm’r. vs. Anderson, adm’r, (3 Leigh’s R. 729,) and although the facts of that case involved the question, whether an administrator can be heard to impeach the deed of his intestate for fraud, yet the question is not made at the bar, nor alluded to in the opinion of either of the judges. It is taken for granted that it may be done, and the decision proceeds on that ground. As the question was not made or considered by the court, the case can have no authority on this point, more especially as it seems to have been loosely considered. But, if the case had turned upon the point in questiori, we regard the contrary doctrine too firmly settled in this State, to be shaken by a different opinion in another State. On both grounds, therefore, we think the complainants are entitled to a decree.
Affirm the decree.